WISCASSETT MILLS COMPANY v. EUGENE G. SHAW, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 1 February, 1952.)

**1. Taxation § 29—**

An expense must be an ordinary and also a necessary expense, and must ordinarily relate in a substantial way to the cost of current operations in order to be deductible in computing taxable income. G.S. 105-147.1.

**2. Same—**

Plaintiff corporation paid a large sum to a municipality in order to have the municipality extend its water and sewer lines through the public streets to plaintiff's property and permit plaintiff to make connections therewith for the purpose of increasing the amount of water available for plaintiff's manufacturing processes and also to provide better fire protection and water and sewerage facilities in its mill village. *Held:* Plaintiff's payment to the municipality is a capital expenditure and is not deductible as a current operating expense under G.S. 105-147.1.

**3. Same—**

A lump sum payment to a municipality to have it extend its water and sewer lines to plaintiff's property and permit plaintiff to make connections therewith for the purpose of furnishing plaintiff additional water for its manufacturing processes and additional fire protection and sewerage service to the houses of its mill village, cannot be deducted as "rentals and other payments" under the provisions of G.S. 105-147.2, since the statute relates to rentals accruing from year to year.

**4. Same—**

A lump sum payment to a municipality to have it extend its water and sewer lines to plaintiff's property and permit plaintiff to make connections therewith for the purpose of furnishing plaintiff additional water for its manufacturing processes and additional fire protection and sewerage service to the houses of its mill village may not be deducted as a general contribution to a municipality under G.S. 105-147.9¾ when such payment was made prior to the enactment of the 1949 amendment.

**5. Statutes § 5a—**

Where a statute contains no technical language it must be interpreted in accordance with the ordinary and common understanding of the words used.

**6. Taxation § 29—**

Where a taxpayer donates property for charitable and educational purposes it may deduct the value of such property at the time of its donation and the deduction may not be limited to the original cost of the property to the taxpayer. G.S. 105-147.9.

**7. Same—**

The rule that a taxpayer may deduct the value of property donated for charitable or educational purposes as of the time of the donation is not affected by G.S. 105-144, which relates solely to the mode of ascertaining realized capital gains or losses in computing taxable income.

APPEAL by plaintiff and defendant from *Clement, J.,* at May Term, 1951, of STANLY.

Civil action to recover for income taxes paid under protest by the plaintiff, heard on an agreed statement of facts without the intervention of a jury. (The case was here on former appeal involving demurrer to the complaint, 233 N.C. 71, 62 S.E. 2d 487).

These in substance are the admitted facts:

1. The plaintiff is a corporation with principal office in Stanly County, North Carolina, where it operates spinning and knitting mills in and near the City of Albemarle.

2. That during fiscal year 1946 the plaintiff by deed of gift conveyed to the Stanly County Hospital, Inc., in fee simple from its property near its plant, a large tract of land which is now being used for hospital purposes; that the Stanly County Hospital, Inc. is a corporation organized and operated exclusively for charitable, scientific, and educational purposes, no part of the earnings of which inures to the benefit of any private stockholder or individual; that the reasonable market value of the land on the date of the gift was $23,500; that the land cost the plaintiff, when acquired by it in 1898, $278.40.

3. That during fiscal year 1947, the plaintiff, by deed of gift conveyed to the Board of School Commissioners of the City of Albemarle in fee simple a large tract of land on which a new school building was erected;

that the land was conveyed for the purpose of, and is being used exclusively for, literary, scientific and educational purposes; that the land at the time of the gift to the School Board had a reasonable market value of $6,000; that the land cost the plaintiff, in 1898, the sum of $225.00.

4. That sometime prior to the end of fiscal year 1946, the requirements of the plaintiff's business made it obligatory for it to increase the water supply at its yarn mill for the purpose of providing needed additional water for use in the manufacturing processes, for the purpose of providing better fire protection, for the purpose of providing additional water and sewerage facilities in the mill village to make it possible to improve the sanitary conditions and the living conditions of the plaintiff's employees who live in plaintiff's houses, and for the purpose of providing better fire protection in the area where the plaintiff's houses are located.

5. In order to provide adequate water and sewerage facilities for these needs, an understanding was reached between the City of Albemarle and the plaintiff, whereby the City agreed to extend, and did extend, its water and sewer lines through the public streets and public roads at and about the plaintiff's plant and mill village, and made it possible for connections to be made therewith by the plaintiff, for which the plaintiff agreed to pay and did pay to the City the total sum of $78,000, of which amount $60,000 was paid during fiscal year 1946, and $18,000 was paid during fiscal year 1947. No part of the city's water and sewer lines was constructed on plaintiff's property.

6. That in the State income tax return for fiscal year 1946, the plaintiff claimed as a deduction the $23,500 item referred to in paragraph 2 hereof, which represents the reasonable market value of the land conveyed to the Stanly County Hospital, Inc. on the date of the gift. This deduction was disallowed by the defendant, and in lieu thereof a deduction of only $278.40 was allowed, representing the cost of the land at the time of its acquisition. The plaintiff also claimed a deduction of the $60,000 item, referred to in paragraph 5 hereof, paid to the City of Albemarle in fiscal year 1946 as inducement for the extension of the water and sewer lines. This item was disallowed *in toto* by the defendant.

7. That in the State income tax return for fiscal year 1947, the plaintiff claimed as deductions (1) the $18,000 item referred to in paragraph 5 hereof, paid to the City of Albemarle that year in respect to the water and sewer lines; and (2) the $6,000 item referred to in paragraph 3 hereof which represents the reasonable market value of the land conveyed to the Board of School Commissioners of the City of Albemarle on the date of the gift. Both of these items were disallowed *in toto* by the defendant.

8. The contributions claimed by the plaintiff during the two fiscal years in question did not in either year exceed five per centum of the plaintiff's net income.

9. That by reason of the disallowance of the several items claimed by the plaintiff as deductions for fiscal years 1946 and 1947, the defendant on 7 September, 1949, assessed additional income taxes and interest against the plaintiff for these years in the total amount of $7,311.89. This, the plaintiff paid under written protest on 7 October, 1949. And on 18 October, 1949, the plaintiff duly made written demand for refund. Thereafter and on 22 December, 1949, the defendant denied the claim for refund and refused to pay the sum demanded, and more than 90 days elapsed after demand before this action was instituted.

Upon the facts agreed the court below concluded and entered judgment directing:

1. That the sums paid to the City of Albemarle in the total amount of $78,000 in connection with the City's water and sewer extensions are not deductible items under the income tax law, G.S. 105-147, and were properly disallowed by the defendant, Commissioner of Revenue, and that the plaintiff was not entitled to recover any of the additional taxes and interest assessed and collected on account thereof. To this ruling, and the portion of the judgment sustaining it, the plaintiff excepted.

2. That the two tracts of land donated to the Board of School Commissioners of the City of Albemarle and to the Stanly County Hospital, Inc., respectively, are deductible under the State income tax law, G.S. 105-147 (9), at their fair market value on the date of each donation, as claimed by the plaintiff; that the plaintiff is entitled to recover the additional taxes and interest paid by the plaintiff on account of the defendant's previous assessment as to these two pieces of property, thus entitling the plaintiff to a refund of $1,994.69 with interest thereon at the rate of six per centum from 7 October, 1949, until paid, and judgment was entered directing a recovery of this amount in favor of the plaintiff and against the defendant. To this ruling, and the portion of the judgment sustaining it, the defendant excepted.

The plaintiff and the defendant, both having excepted as herein set out, appealed to this Court, assigning errors.

*W. H. Beckerdite and E. T. Bost, Jr., for plaintiff.*

*Harry McMullan, Attorney-General, James E. Tucker and Harry W. McGalliard, Assistant Attorneys-General, for defendant.*

### The Plaintiff's Appeal

JOHNSON, J. The plaintiff corporation made contributions of $60,000 and $18,000 in successive years to the City of Albemarle as inducement for the City to extend its water and sewer lines over its own streets to the plaintiff's mill and mill village. The plaintiff insists that for income tax purposes each of these items was deductible in its entirety the year

of payment. The court below adopted the view that the payments were capital expenditures, and thus not deductible. The record as presented sustains this view.

1. The plaintiff places main reliance on its contention that these items were deductible as ordinary and necessary operating expenses under the provisions of G.S. 105-147.1. This statute provides that in computing net income there shall be allowed as a deduction: "All the ordinary and necessary expenses paid during the income year *in carrying on any trade or business.* (Italics added).

This Court has not been called upon heretofore to determine what is or is not an "ordinary and necessary expense" within the meaning of this statute. Nor is it necessary in this case, or advisable for the annals, that we undertake to formulate an all-embracing definition of these words. This is so for the reason that what are "ordinary and necessary" expenses necessarily vary in individual cases, and depend upon the nature of a particular business, its size, its location, its mode of operations, and to some extent the business customs and practices prevailing at the time and in the locality or area where the taxpayer operates. Therefore, in order to take care of the varying situations as they arise, the statute should be left flexible in form for application in individual cases according to the practical meaning of the statutory language.

Examining the statute with this in mind, it seems clear that in order for an item of expense to be deductible it must be both an "ordinary" expense and a "necessary" expense, since these words are used conjunctively. Also of controlling significance is this phrase appearing in the statute: "in carrying on any trade or business." Here, the connotation is that the expense in order to be deductible must relate to the cost of "carrying on" the business, and carrying on a business in plain language means operating the business. Therefore, it would seem that an expense in order to be deductible within the purview of the statute not only must be an "ordinary and necessary" business expense, but as a general rule it must relate in a substantial way to the costs of current operations,—to the costs of producing the gross income from which the deduction is sought.

It is manifest that the statute does not sanction the deduction of an expenditure the underlying purpose and predominate effect of which are to provide permanent improvements or betterments reasonably calculated to enhance the value of the taxpayer's business or property for a period substantially beyond the year in which the outlay is made. Such an outlay is a capital expenditure, as distinguished from an item of normal operating business expense, and is not deductible for income tax purposes. See the following authorities relating to the interpretation of a substantially similar provision in the Federal income tax law: 47 C.J.S., Internal Revenue, Sec. 153; 27 Am. Jur., Income Taxes, Sec. 95 (in-

cluding 1951 cumulative supplement); *Welch v. Helvering*, 290 U.S. 111, 78 L. Ed. 212; *Deputy v. duPont*, 308 U.S. 488, 84 L. Ed. 416; Prentice-Hall Tax Service, 1951, Par. 11-090.

Ordinarily, the expense of installing sewers is treated as a capital expenditure. Paul and Mertens, Law of Federal Income Taxation, Sec. 23.149.

It seems to be conceded that if the plaintiff had laid water and sewer mains on its own property, the outlay therefor would be classified as a capital expenditure, to be depreciated on an amortization basis over a period of years. Here, however, the plaintiff urges that the general rule as to capital expenditures does not apply for the reason that the plaintiff does not own the property on which the water and sewer mains were laid, and that the plaintiff has no title thereto nor equity therein. Nevertheless, we do not think the fact that the plaintiff does not own the property on which the mains were laid and did not by contractual arrangement with the City acquire some vested property rights therein in return for the sums paid to the City should have the effect of transforming these capital expenditures into ordinary and necessary business expenses to be written off entirely within the year.

2. Nor is the plaintiff entitled to write off the controverted items as "rentals or other payments" under the provisions of G.S. 105-147.2. Indeed, it may be doubted that this statute has relevant application to the instant items. The statute by its express language allows the deduction only of such "rentals or other payments required to be made as a condition of the continued use or possession for the purpose of the trade of property to which the taxpayer has not taken or is not taking title, or in which he has no equity."

Necessarily, then, it would seem that the statute was intended to provide for the deduction only of "rentals or other payments" as and when the items accrue from year to year, and in no event may this statute be interpreted as authorizing the deduction in one year of a prepayment of rentals or other like charges for a period of years in advance. This is in accord with what is said in 27 Am. Jur., Income Taxes, Sec. 96, commenting on the Federal statute which is similar to our State statute: "Rentals required to be paid for the use or possession of business property, not owned by the taxpayer and in which he has no equity, may usually be deducted in computing income tax. However, where an expenditure made by a lessee is in the nature of an investment in property used in his trade or business, or is the cost, or part of the cost, of the lease itself, it cannot be deducted *in toto* from the lessee's taxable income as an expense for the year in which it occurred, but must be recovered in annual allowances. Thus, advance rentals and bonuses, the price paid for an assignment of a lease, and other similar expenditures by a lessee are not deductible as ordinary and necessary business expenses

in the year of payment, but are required to be spread over the entire life of the lease."

Nor may the controverted items be deducted as general contributions to a municipality under the provisions of Chapter 392, Section 3, subsection (c), Session Laws of 1949, now codified as G.S. 105-147.9¾. This is so because the items relate to taxes which accrued in 1946 and 1947, prior to the enactment of this amendment.

This record indicates that after the water and sewer mains were extended to the mill and mill village, the plaintiff made installations at the mill by which it materially increased the consumption of water at the dyeing plant and improved fire protection facilities through its then existing sprinkler system. The details of these installations are not shown by the record. However, it does appear therefrom that the plaintiff installed running water and bathroom facilities in 439 of the village houses which previously were without these facilities. These installations represent capital betterments on property actually owned by the plaintiff. The question whether the plaintiff may treat the controverted payments to the City as items of cost incidental to the installation of these added facilities at the mill and in the village houses, for the purpose of depreciation or amortization under G.S. 105-147.8, is not presented for decision on this record. This question, if need be, may be raised by motion in the cause below.

On the plaintiff's appeal, the judgment below is
Affirmed.

### The Defendant's Appeal

The plaintiff corporation by deeds of gift donated from its real estate holdings a site for a public school and also a hospital site. It is admitted that these gifts are deductible for income tax purposes. The question posed by the appeal is whether the value of this property for purposes of deduction is to be fixed as of the date of each gift, as contended by the plaintiff, or as of the date the plaintiff acquired the property in 1898, as contended by the Commissioner of Revenue. The court below held that the value as of the date of the gift controls, and we approve.

G.S. 105-147.9 by its terms permits a corporation to deduct *"contributions or gifts"* made to certain designated charities and agencies *"to an amount* not in excess of five (5%) . . . of . . . net income."  (Italics added).

This statute contains no technical language. Thus, it must be interpreted in accordance with the ordinary use and common understanding of the words used. *Cab Co. v. Charlotte,* 234 N.C. 572, 68 S.E. 2d 433. According to ordinary use, the "amount" of a gift and the value of a gift have the same meaning and effect. It follows, then, that when a contribution is made in property rather than in cash, the amount of the

gift, and the amount of the deduction, is the fair market value of the property at the time of the gift.

The principle here applied is in accord with the uniform interpretation and administration of the Federal Income Tax Law since 1923, and our statute, which first became effective in 1921, is substantially similar to the Federal act.    See C. ·C. H. Par. 331.325.

The rule here applied harmonizes with one of the fundamental principles that undergirds the income tax law, and that is, that a taxpayer may not be taxed on the appreciation in value of property until the gain is realized.    Here, the theory is that no gain is realized by a taxpayer when he gives property away.    Stanley and Kilcullen, The Federal Income Tax, Sec. 23 (o), p. 90.    See also Rabkin and Johnson, Federal Income Gift and ,Estate Taxation, Vol. 2, Sec. 59.05; C. C. H. Par. 331.325.    Nor does the rule here applied in any way impinge G.S. 105-144.    This statute has to do only with fixing for tax purposes the mode of ascertaining realized gains or losses sustained in respect to the disposal of property.    Hence the statute is not applicable to the instant case.    .

This rule also rests upon considerations of sound public policy.    It encourages, within reasonable limits, gifts to charities and benevolences. These gifts, for the most part, by indirection lighten the load of tax-supported public services; and it is always within the power of the law-making body to prevent abuses by controlling both the amount of deductible contributions that a' taxpayer may make and also by restricting the objects to which these contributions may be made.

On the defendant's appeal, the judgment below is
Affirmed.